I guess we could refer to this as the two hands better than one case if you're moving a pan of hot oil. I'd like to address the issue of the standard of review at the same time as I address the merits of the Commission's findings, and I think necessarily so. I think clearly this is a de novo review. Because there are... The facts are on dispute? I think that clearly on the basis of the record, the facts are undisputed. I don't think that you can simply say, have the Commission or any tribunal say, well, the facts are disputed, unless the record supports that. There are no disputed facts here. If you look at the record, page 14 through 19, on no less than four separate occasions as Mr. Schneider was reporting, walk through the occurrence events, he consistently says the same thing about how he was holding the phone, talking to Tanya Brewer at the time this incident occurred. At no time does he say anything different than that. There was nothing on cross-examination to suggest anything different. There were no other witnesses to testimony. There was nothing, and there is nothing, in this record to support the Commission's statement in their order that the petitioner didn't establish after he approached the stove if he was cradling the phone in his neck or continued to hold it with his right hand. I am mystified and completely baffled. Where did they come up with that? There is nothing in this record to suggest that. And in fact, as I said, step by step by step, he goes through where this accident occurred. So I think that in spite of the suggestion by the Commission that they think that this fact is disputed, it is not borne out by the record in this case, and your review should be to no avail. They go on, of course, to say that they think this fact is relevant in determining whether the use of the phone contributed to the occurrence, which to me implies that if, in fact, he had the phone in his right hand and was only using his left hand, that that implies to me that they would say, well, yes, it did contribute to that. They never say that, but they certainly suggest that in their view. Let me just ask you the overarching question. And we can get into what hand he was using, whether he should have used one hand, two hands. I think the case turns on the rising out of issue. It does. Which means, obviously, it has to have some origin and a risk connected or incidental to the employment. So the question that I have is, is cooking connected with the employment or is it simply a purely personal thing that everybody does? Well, there's no question that what he was doing, the cooking, is personal. But that's not the issue. The issue is the phone call. Because what he's doing at the time is reasonable, it's anticipated, it's expected. He's allowed to do the laundry, he's allowed to do whatever. He's on the clock being paid because he's waiting for the phone call. When he takes the phone call and is talking with the use of his phone, which he has to do with one hand, and what he recognizes, and that was unrefuted, as being somewhat of an urgent situation, we've got to get out there and get these barricades back in place because the managers in town don't want him to see that we're using a parking lot that was closed for use. There was nothing about his work that required him to move the pan of oil while he was still talking on the phone, right? He moved the pan of oil because he was going to go outside immediately. I mean, he had to do that. I mean, he could have finished the conversation, hung up, and then moved the phone. Now we're talking about negligence, aren't we? And I think that's where the Commission really went astray here. Negligence has nothing to do with it. The issue is whether or not cooking and moving the pan at the time of the work-related call is a personal, you know, convenience, or is it somehow connected to his work? Well, if it is personal, then we have the personal comfort doctrine. The question becomes, did his work activity increase the risk of what he was doing at the time? And I think the answer to that is obviously yes. He had done this many, many times before with two pans. And once this catches fire, once he makes this motion to get it off of the stove, it catches fire, it sets into, it then sets into this chain of events where he burns himself. That was the other problem I perceive with it. So you would define his work activity as he's required to answer the phone? Absolutely. And to do what he's told by time you brew or when he does answer the phone, which was get out and move the barricades. Okay, so let's assume that that's correct. Answering the phone is purely undisputed to be a work-related activity. Yes. So according to your logic, any time somebody has to take calls, a ramp call, and while taking the call, they decide to do something else, move garbage cans, skydive, whatever, obviously the injury is compensable because the call is all that matters. The things that... Because whatever else they're doing, if it's purely personal, it is connected to work automatically. If those things are reasonably expected, okay, this is not some, the skydiving obviously is something you wouldn't expect an employee to be doing. This man is at home waiting for a phone call. He's still on the clock working well beyond his scheduled hours. It's reasonable to expect... So why does he just turn the burner off? Why does he have to keep on cooking while he's answering the phone call? The burner was on. He turned it off. And then had to move the pan of oil because it's on a hot burner. It's an electric stove. At the point in time when he was moving the pan, he had both hands on the pan, didn't he? He wasn't holding the phone any longer. No. He first moved the phone. He first moved the pan with one hand. That's when the oil spilled and caught the stove on fire. He then drops the phone because now he's got a fire with the fuel source sitting on the stove with fire, and he moves the pan. That's when the oil splashes on him. And that's where the, and again, I believe that's where the commission goes wrong in their analysis. They say, well, he moved it with two hands. Whatever happened, approximate cause, the chain of events that started when he moved the pan because he was holding the phone with one hand, and that's when the fire started. There's no intervening cause between that and him burning himself. So I'm at a loss as to how moving that frying pan arises out of and in the course of his employment. I mean, it's incidental to his employment under the Personal Comfort Doctrine. In the course of leaving, arising out of? Arising out of? It's incidental. What he was doing was incidental to his employment under the Personal Comfort Doctrine. And what he did by taking the phone call with one hand caused the accident. I think I know you can answer this, but, so if somebody is a businessman, let's see, let's assume your client was driving a car somewhere, and he gets a call, and he reaches over to pick up the phone. Any accident would be compensable, right, because he had to answer the phone, and he got distracted, right? Well, his accident would be compensable anyway if he's driving in part, driving his car. He was going to McDonald's. He had nothing to do with his job. Well, the example, if I could, would be, he does not have to be on the premises. Am I correct? Oh, yes, he does. This gentleman? He was required to live there. Oh, right, but I mean, he is on call. He is on call. That's correct. So reasonably, he could, instead of fixing dinner, he could go down to Steak and Shake, okay? And while he's on Steak and Shake he couldn't have reasonably gone to Steak and Shake this night because he was required to be there and be on the clock and be available. But, let's not, back to the example of Justice Hudson, he could be within the scope of his employment going to Steak and Shake to get a sandwich if he's supposed to be on call during those hours, am I correct? Right, exactly. Okay, so that would be the example. So I'll just, if you want to continue with me. Well, and then what happens if he has an accident? He's not going to Steak and Shake for his employer. He's going there and he takes a phone call. According to your logic, then, because part of the equation is he's getting a call that's employment related, whatever else is going on is irrelevant to compensability according to your argument. Well, there is a whole line of cases about the out-of-town person, if you're talking about that. No, we're not talking about out-of-town. When he's going someplace, he is in the course of his employment. He's a traveling employee. This guy's not a traveling employee. You're saying that he gets a call because he has to take the call. No matter what else he's doing, it doesn't matter. If he gets hurt taking the call, then it's compensable, you're saying, obviously. Because cooking is not a job-related activity. We can all agree with that. He's not required to cook for the employer. But taking the call under these circumstances when he was doing something which was incidental and reasonably expected, the man's got to eat, okay? He's in his apartment. It's anticipated that he's going to do things, personal things in his apartment. When that increases the risk of him being injured, it's compensable. What increased the – what did the employer have to do with the increase in the risk? What did the employer have to do with it? The employer? Yeah. Required him to answer the phone. Well, the employer also said, come down right now. Exactly. I mean, that's really the crux of it. That's your best argument, isn't it? Right. That's why he had to turn off the stove and move – This lady, his supervisor, is standing on the deck of her apartment, watching and waiting for them to close up the truck and leave because the barricades have to go up right away. Because the manager is in town and the barricades are not supposed to be down. The parking lot had just been repaved. And that was her concern, and it was my client's concern as well, to do his job as he was expected to do. So he obviously is doing everything he can to get out there as quickly as he can to replace the barricades. You couldn't even convince Molly Mason? Pardon me? You couldn't even convince Molly Mason that there was merit to your case? Well, I'm sorry that you hold that opinion. I believe there is merit to the case. I'm talking about Molly. Molly Mason didn't think there was any merit to it. One of the commissioners. I can tell you that one of the questions asked by the commission was, well, why couldn't he have waited until he was done with the phone call, which gets into this negligence issue. And I think that's where the commission is wrong. The idea of, well, he could have done something else, that's the case in most work injuries, that you could have done something else. But negligence and comparative negligence is not an issue. It is a question, though, he could have got a personal phone call and had the same thing happen. In which case I wouldn't be here. But still the question is, how is it related to his employment? I mean, just because it was a business phone call. Which required him to answer and required him to take immediate action, which resulted in his injury. We don't have time. Thank you. Counsel, please. Good afternoon. May it please the Court, Counselor. My name is Eric Chivanek, and I represent the Defendant Appellee Personal Management. I just have two quick points I'd like to make today. First, the same point that Counselor brought up, the standard of review. The Circuit Court was correct, in my opinion, in determining the standard of review. Applicable to this case is that of the manifest weight standard. As the Circuit Court stated, decisions on conflicting evidence, permissible inferences from the evidence, and questions of fact are generally within the province of the administrative body. Counselor himself was making arguments regarding the approximate cause of the actual injury. That is a factual argument of what approximately caused this injury. That's not a legal argument. That is a factual argument, and it's required for the administrative body to look at the inferences of the testimony and other facts that are put in front of them to determine that. So the only question we have in this case is whether the employee's injury arose out of his employment, and more specifically, whether he was exposed to a risk greater than that to which the general public is exposed. This is simply a determination of a factual basis. But what about his argument that he was exposed because he's got to be on call, he's got a demanding employer on the other end wanting immediate action, so he's in a panicked state, and while he's talking on the phone, which is clearly work-related, this accident happens. And that brings me to my second point, Your Honor, and it's a short point. The reality is that he hurt himself picking up a frying pan with two hands. That's when he actually hurt himself. It wasn't at any other point. It was when he was picking up a frying pan with two hands. There's no testimony that this was a raging fire, that it was anything other than a fire. And regardless of that, when he actually hurt himself. Anything other than a fire. I misspoke, Your Honor. The testimony is that he hurt himself while picking up a pan with two hands, trying to move it over. He didn't have a phone in his hand at that time. He was doing something that he testified that he did on a regular basis. But I think all of us would agree that people throughout America do that, or people throughout the state of Illinois, do that on a regular basis. That's how he hurt himself. His position, though, he doesn't do it in a hurried state. The employee's phone call triggered this hurried state, ergo the accident. I would agree that the employee's phone call, that the employer's phone call possibly have made him hurried, but at the point that he actually injured himself, there was no reason to be hurried. The phone was down. He was dealing with the situation of the pan on the stove that he needed to move. He didn't need to be hurried at that point. Why did he have to move that pan? He chose to move it because I assumed that there was a fire. There was a fire. Because there was a fire, Your Honor. And a second point on the same issue, that he received this phone call. There's no testimony or I cannot understand a reason why he needed to move the pan at that point when he received this phone call. Yes, I agree that he was hurried, that he understood that he needed to do this quickly. But he received a phone call from his employer. He had to go do something quickly. That doesn't mean that at the same time he needed to be using one hand to move a pan that he agreed was three and a half pounds. He could have turned it off. He could have done any number of different things. And regardless of all that, the point that he was actually hurt, he was doing something that we all do on a regular basis, on a frequent basis. We all do on a regular basis. Move a frying pan with two hands. Well, you just described a heavy frying pan. And apparently I've helped him that he's got a phone in one hand, okay, and he's moving the frying pan with one hand, right? Correct, Your Honor. And what I was intending to imply was that he injured himself when he was moving a frying pan with two hands. The whole chain of events begins when you're holding a phone to your ear and you're moving a pan with one hand. And that precipitates apparently a splash that starts a fire. Sounds like a tour case, doesn't it? Was part of his job to cook a meal? Part of his job was not to cook a meal, Your Honor. Was part of his job to cook meals? No, Your Honor. Did they tell him how to cook his meals? They did not, Your Honor. Why did he have to move the frying pan to begin with? I do not know, Your Honor. He shut himself off, right? Boom, off, done. He could have, Your Honor. So my question is, wouldn't he have been exposed to the same risk if he had received a personal telephone call? I agree, Your Honor. Exactly the same risk he's supposed to. I'm at a loss to understand why he wouldn't have been, if he's going to move a frying pan with one hand or two hands or however he's going to do it, a five-and-a-half-pound frying pan, why he wouldn't have been exposed to the same risk of tipping and burning if he had gotten a personal call as he was when he got this business call. And I agree with that argument, Your Honor. In our brief, Your Honor. Unless there are any further questions. I have nothing further. Thank you, counsel. Maybe you can help me. The response to your question is this. If my wife calls me right now on my cell phone, I don't have to take the call. You don't? No. You realize this is being recorded. I also could say, I'll call you back later. I've got to do something. He couldn't do that. He didn't have the luxury of that because he had to do something quickly. And when you say why did he move the pan, that's a great question. He moved the pan so he could get out the door, so it's all part of the same thing. Move the pan to get out the door? It's an electric stove. Yeah, I understand. I'm a cook. I move them. If you leave a pan of hot oil on an electric stove, it's going to burn the oil before the burner cools down. Move it to the other burner. Is that what he's doing? He's moving it to the other burner. So shut it off first with one hand, with the left hand as he's holding the phone and attempts to move it off that burner. So he could get out the door to go do what he had been asked in order to do. How can you say that moving that pan is not part of his job, so to speak, because he has to get from point A to point B, and he can't go to point B without attending to what he's doing at point A first. I don't see how you can separate those things. Thank you. Clerk, we'll take the matter under driver for disposition. We'll stand at recess until 9 o'clock in the morning.